Nancy SMITH, Individually and as Executor of the Estate of Marvin H. Smith, Decedent, Plaintiff,

v.

CESSNA AIRCRAFT CORPORATION, a Foreign Corporation, Defendant-Counterplaintiff,

v.

Nancy SMITH, Individually and as Executor of the Estate of Marvin H. Smith, Decedent, Counterdefendant.

No. 75 C 4398.

United States District Court, N. D. Illinois, E. D.

March 22, 1977.

William H. Schrader and Michael H. West, Heineke & Schrader, Chicago, Ill., for Cessna Aircraft Co.

Hugh C. Griffin and Frederic Weber, Lord, Bissell & Brook, Chicago, Ill., for Nancy Smith.

MEMORANDUM OPINION

WILL, District Judge.

This is one of several actions pending before us arising from the crash of a Cessna 177 Cardinal airplane on August 24, 1974. In this action, plaintiff, widow of, and executor of the estate of one of the decedents, has brought suit against the Cessna Air-

craft Corporation, alleging that the airplane was unreasonably dangerous and that Cessna breached various warranties. Cessna has counterclaimed against plaintiff, alleging that plaintiff's decedent was the pilot-in-command of the airplane, and that his negligent acts were the proximate and direct causes of the crash. Cessna alleges that, in the event it should be found liable to any plaintiffs in any of the other cases pertaining to the crash, it will be entitled to indemnity and apportionment from plaintiff herein. Plaintiff now moves to dismiss the counterclaim for failure to state a claim upon which relief can be granted and on the ground that the counterclaim does not present a justiciable case or controversy. For the reasons herein stated, we grant plaintiff's motion to dismiss the counterclaim.

## I.

We are faced, at the outset, with a basic question concerning the scope of national power and the federal system. Our jurisdiction in this case is founded on diversity of citizenship, 28 U.S.C. § 1332. Under the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal district court sitting in diversity jurisdiction is required to apply the substantive law of the state in which it is sitting. This includes that state's conflict of laws rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). It is clear, and Cessna has conceded, that under Illinois law, the manufacturer and seller of a defective product cannot maintain an action for indemnity against a subsequent user, whether the original suit is based upon strict liability or negligence. *See, e. g., Vassolo v. Comet Industries, Inc.,* 35 Ill.App.3d 41, 341 N.E.2d 54 (1975); *Burke v. Sky Climber, Inc.,* 13 Ill.App.3d 498, 301 N.E.2d 41, 45 (1973).[1] *See also Kuziw v. Lake Engineering Co.,* 398 F.Supp. 961 (N.D.Ill.1975).

Defendant argues, however, that the proper law to be applied is a federal com-

mon law of indemnity and contribution, as announced by the Seventh Circuit in *Kohr v. Allegheny Airlines, Inc.,* 504 F.2d 400 (7th Cir. 1974). *Kohr* involved a mid-air collision of a commercial airliner and a private plane. At least thirty-eight wrongful death actions were filed in seven district courts in as many states. The Judicial Panel on Multi-district Litigation consolidated the actions in the Southern District of Indiana. *See In re Mid-Air Collision Near Fairland, Indiana,* 309 F.Supp. 621 (Jud.Pan. Mult.Lit. 1970). By the time of disposition, wrongful death actions had been commenced on behalf of over eighty of the deceased occupants of the two planes. The district court, relying upon Indiana law, dismissed claims for indemnity and contribution. The Seventh Circuit reversed, stating:

> The basis for imposing a federal law of contribution and indemnity is what we perceive to be the predominant, indeed almost exclusive, interest of the federal government in regulating the affairs of the nation's airways. Moreover, the imposition of a federal rule of contribution and indemnity serves a second purpose of eliminating inconsistency of result in similar collision occurrences as well as within the same occurrence due to the application of differing state laws on contribution and indemnity. Given the prevailing federal interest in uniform air law regulation, we deem it desirable that a federal rule of contribution and indemnity be applied. 504 F.2d at 403.

We fully agree that, in a case which "looked like a paradigm conflict-of-laws exam question," Note, *The Case for a Federal Common Law of Aircraft Disaster Litigation: A Judicial Solution to a National Problem,* 51 N.Y.U.L.Rev. 231, 241 (1976), where the conflicting interests of a number of states as well as the federal government were involved, and where there was a serious possibility of differing results arising from the same factual situation, the *Kohr* creation of a single federal substantive law

---

1. Negligence in manufacture in Illinois is considered "active," as opposed to "passive" negli-

gence, and an action for indemnity is not allowed. See *Burke, supra.*

was mandated by considerations of both logic and equity.[2] We do not, however, believe that *Kohr* should be extended to the instant situation. We are here dealing with a non-commercial plane which took off from one location in Illinois bound for another location in Illinois. It crashed in Illinois killing all four occupants, two of whom were residents of Illinois. Each of the four wrongful death actions resulting from the crash were filed in Illinois, either in state or federal court, and all are presently before us. The plane was owned by an Illinois resident, was hangared in Illinois, and was purchased and serviced in Illinois. (Plaintiff's Memorandum in Support of its Motion to Dismiss Counterclaim).

■ The necessity for a single federal law is not present in this case, but Illinois' interest is obvious.[3] Attempts in the 90th and 91st Congresses to create exclusive federal jurisdiction over damage actions resulting from aviation accidents died in committee "because of opposition to interference with traditional state tort law." Note, 28

Vand.L.Rev. 621, 625 (1975). *See also* Sanders, *The Tydings Bill,* 36 J.AirL. and Comm. 550 (1970); Tydings, *Air Crash Litigation: A Judicial Problem and a Congressional Solution,* 18 Am.U.L.Rev. 299 (1969). While such action, or lack of it, is not, of course, determinative, it does shed some light on the evaluation of the weight of federal interest involved.[4]

The Illinois courts have had occasion to announce their interpretation of the *Kohr* decision and other cases cited by Cessna. In *Praznik v. Sport Aero, Inc.,* 42 Ill.App.3d 330, 355 N.E.2d 686, 694–95 (1976), involving aviation guest statutes, the Court noted that:

> While plaintiff cites several cases which mention a federal intent to govern all matters dealing with the issue presented to this court, . . . *Kohr v. Allegheny Airlines, Inc.* [citation omitted], *In Re Paris Air Crash of March 3, 1974* (C.D. Cal.1975), 399 F.Supp. 732; *Gabel v. Hughes Air Corp.* (C.D.Cal.1972), 350 F.Supp. 612, all concerned cases brought

---

2. A commentator noted, however, that:

"In the *Kohr* opinion the Seventh Circuit failed to deal with the application of the *Erie* doctrine even though the jurisdiction of the case in the district court was based on diversity of citizenship and the Federal Tort Claims Act. It is submitted that in order for the Seventh Circuit to disregard Indiana law and apply a federal law of contribution and indemnity, the impact of the *Erie* doctrine on that decision must somehow be explained or distinguished." Prewitt, *Federal Common Law of Aviation and the Erie Doctrine,* 40 J.AirL. and Comm. 653, 659 (1974).

We believe that this is a fair criticism of *Kohr.* It should also be observed that the Supreme Court, in dealing with an air crash action brought under the Federal Tort Claims Act, refused to create an independent federal conflict of laws rule, stating:

"It seems sufficient to note that Congress has been specific in those instances where it intended the federal courts to depart completely from state law, and also, that this list of exceptions contains no direct modification of the principles controlling application of choice-of-law rules." *Richards v. United States,* 369 U.S. 1, 14, 82 S.Ct. 585, 593, 7 L.Ed.2d 492 (1962). *See also Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 273–74, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).

3. Illinois has adopted the "most significant relationship" test of the Restatement, Second, Conflict of Laws as providing the relevant factors for determining choice of law in tort cases. *See Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970). Although two of the decedents were residents of states other than Illinois, the contacts and relationships involved are clearly centered in Illinois. See Restatement, Second, Conflict of Laws § 145.

4. "The 'Holtzoff Bill' introduced into the Senate in 1968, provided for exclusive federal jurisdiction over civil actions arising out of the operation of aircraft. S. 3305, 90th Cong., 2d Sess. § 1 (1968). As a result of opposition, the 'Admiralty Bill' patterned after the Death on the High Seas Act 46 U.S.C. §§ 761–62 (1970), was introduced, and provided for exclusive federal jurisdiction over any action for damages from injury or death for any breach of a duty arising in the course of aviation activity. S. 3306, 90th Cong., 2d Sess. § 1 (1968). Because of heavy attack on the breadth of the provisions the 'Tydings Bill,' S. 691, 91st Cong., 1st Sess. § 1 (1969), was introduced limiting federal jurisdiction to only those cases involving substantial numbers of people and suits in multiple jurisdictions."

Note, 28 Vand.L.Rev., *supra,* at 625 n. 35.

in federal court which involved strong federal interests. *In Re Paris* involved a plane crash which took place in Paris injuring citizens of many countries, and the defect causing the crash was of a type which the Federal Aviation Administration sought to prevent. *Kohr* applied federal rules of contribution and indemnity to a case which involved a mid-air collision of a commercial airliner and private aircraft injuring residents of several states and involving a claim against the federal government under the Federal Tort Claims Act. *Kohr* was also being supervised under the federal Multidistrict Litigation Act. *Gabel* concerned a collision of a private passenger plane and a military jet. The case at bar brought before our state court, involved the deaths of Illinois residents which resulted from the allegedly negligent operation of an Illinois aircraft during a plane trip which originated from Frankfort, Illinois. The federal interest in this case is slight compared to the Illinois interest in governing the tort claims of its residents. *See also* the district court's later decision in *In re Paris,* 420 F.Supp. 880, 881 (C.D.Cal. 1976), which found that "[t]he law of California is the law applicable to all issues in the Paris Air Crash cases," and *Sanz v. Renton Aviation, Inc.,* 511 F.2d 1027 (9th Cir. 1975), which suggests a distinction between commercial and private airplane accidents for the application of federal or local law.

In conclusion, therefore, we recognize that, despite Justice Brandeis' assertion in *Erie, supra,* 304 U.S. at 78, 58 S.Ct. at 822, that "there is no federal general common law," a federal common law does exist and may even be essential in airline disasters involving citizens and laws of numerous states. *See generally* 2 J. Kennelly, *Litigation and Trial of Air Crash Cases* ch. 6

(1968); P. Bator, P. Mishkin, D. Shapiro, H. Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System* 756–832 (2d ed. 1973). We hold, however, that in the specific factual situation before us, involving a single, non-commercial aircraft and a wholly intrastate flight, in which practically all the relevant contacts were centered in Illinois and involving an area of law, torts, traditionally subject to local control, the interest of Illinois in applying its own substantive law of indemnity and contribution is greater than the federal interest in the field. Nor do we feel that "creative development by the judicial process" should be completely foreclosed to the state courts through federal pre-emption of all aspects of aviation. *See Hart and Wechsler, supra,* at 832. As Cessna has conceded that Illinois law does not support a cause of action for indemnity and contribution in this situation, we grant plaintiff's motion to dismiss the counterclaim.[5]

An appropriate order will enter.

---

**5.** In light of our ruling on the federal/state question, we need not reach plaintiff's other grounds for dismissal, based upon an assumption that federal law might apply.

We also recognize that Cessna has based all of its arguments against dismissal on the premise of the applicability of federal law. While we believe that plaintiff is correct in her statement that Illinois law does not support Cessna's counterclaim, and Cessna has apparently conceded as much, we will allow Cessna to reinstate the counterclaim if it can demonstrate, by memorandum filed within 15 days of this order, that its action can stand under Illinois law.